Minnie WILLIAMS *v.* Ray SCOTT, Executive Director, Arkansas Department of Human Services et al

82-210                                          647 S.W.2d 115

Supreme Court of Arkansas
Opinion delivered February 28, 1983

*Janet Pecquet,* Legal Services of Northeast Arkansas, for appellant.

*Carolyn Parham,* Arkansas Department of Human Services, for appellees.

GEORGE ROSE SMITH, Justice. This cases arises under the Medicaid Program, created by federal law but administered in part by the state. The program provides free medical assistance for indigent persons who are disabled within this definition of disability: "Physical or mental impairment which prevents the individual from doing any

substantially gainful work . . . and which has lasted or is expected to last for at least 12 months." Medical Services Manual, § 3320 (1) (c), as quoted in the record.

The appellant, Minnie Williams, applied for medical benefits under the program. Her application was approved in May, 1980, but when her case came up for review in April, 1981, she was found to be ineligible for benefits. She was given an administrative hearing, but the Medical Review Team, consisting of a doctor and a social worker, again found her to be ineligible. That decision was affirmed by the circuit court. The appeal comes to us under Rule 29 (1) (c).

The significance of the various pertinent facts can be better appreciated if we first outline the principles that govern our review of the case. Under the Administrative Procedure Act an administrative decision can be reversed if it is not supported by substantial evidence or is arbitrary, capricious, or characterized by abuse of discretion. Ark. Stat. Ann. § 5-713 (h) (Repl. 1976). At the outset we stress the fact that this particular administrative proceeding is not a truly adversary one; that is, there is no burden on the Department of Human Services to investigate the appellant's claim and introduce rebutting proof. Instead, much as in the instance of a person seeking a license of some kind, the burden is on the applicant to prove her eligibility to the satisfaction of the administrative agency. *See Gray's Butane Wholesale* v. *Ark. Liquefied Petroleum Gas Bd.*, 250 Ark. 69, 463 S.W.2d 639 (1971).

An administrative agency, like a jury, is free to believe or disbelieve any witness. *Meyer* v. *Seismograph Service Corp.*, 209 Ark. 168, 189 S.W.2d 794 (1945). We give the evidence its strongest probative force to support the administrative decision. *Franks* v. *Amoco Chemical Co.*, 253 Ark. 120, 484 S.W.2d 689 (1972). To establish an absence of substantial evidence to support the decision the appellant must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded men could not reach its conclusion. *Ibid.* Finally, the question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made.

*Campbell* v. *Athletic Mining & Smelting Co.,* 215 Ark. 773, 223 S.W.2d 449 (1949).

The facts, viewed most favorably to the appellee, are these: The claimant, now age 60, never married and has depended upon members of her family for support. She can read and write a little, but is functionally illiterate. The only work she has done outside the home was agricultural field labor. Some 15 to 20 years ago she discontinued that work to take care of her mother. In March, 1979, her mother had a stroke and eventually became blind and an invalid. The claimant cared for her mother until her death in November, 1979. Since then she has lived with her brother. A social worker reported in August, 1981, that the claimant "takes care of her personal needs. She is not bed, chair or house bound. [She] has charge of the homemaker chores. She spends her days doing her housework and visits her neighbors. . . . .[She] is friendly and cooperative." Upon the nonexpert proof we think a fair-minded person could reach the conclusion that the claimant is not physically disabled.

Nor can it be said that the expert proof is conclusive. In April, 1980, when the claimant first applied for Medicaid, her physician, Dr. Ashley, filled in a form with information that is more favorable to the claimant than anything else in the record. He wrote that she had migraine (headaches), goiter, generalized arthritis, otitis (inflammation of the ear), anxiety reactions, and perhaps other ailments not made clear by the record. In his comments Dr. Ashley referred to the claimant as totally illiterate and concluded that she was totally disabled, unemployed, and unemployable. In May, 1980, the Medical Review Team found the claimant eligible for benefits. Their report ended by requiring a re-examination in May, 1981.

On April 9, 1981, another doctor filled in the same form with information less favorable to a finding of disability. This time the Medical Review Team found the claimant ineligible, on May 1. Dr. Ashley then submitted a new evaluation on May 11, in which he said: "This lady is *unemployed and unemployable.* [Dr. Ashley's italics.] In 58 yrs. has no work experience except caring for her mother,

who died on 28 Nov. 1979. . . . Her brother is now 'kicking her out' in favor of a girl he wants to marry." On October 5 there was a hearing at which the claimant testified but offered no other evidence to support her claim. The Medical Review Team again found her to be ineligible for benefits.

We find it impossible to say that fair-minded persons could not conclude that the claimant failed to establish her entitlement to medical assistance. Dr. Ashley, quite evidently an advocate for his patient, did not limit his opinion to the claimant's physical disability to work, for he stressed her illiteracy and her lack of work experience. Medicaid, however, is not available for the unemployed and unemployable; it is for the aged and the physically disabled. Dr. Ashley did not attempt to pinpoint any one or more of his patient's ailments that were actually disabling. The Medical Review Team, selected for their expertise in such matters, did not consider the claimant's several ailments, most if not all of which had afflicted her for many years, to be totally disabling. With the evidence in conflict, we cannot say that the Team acted without substantial evidence or arbitrarily and capriciously.

Affirmed.

PURTLE and HAYS, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority in this case because, in my opinion, the overwhelming preponderance of the evidence substantiates the appellant's claim of total disability. All Minnie Williams is asking is that she be granted medicaid as one who is medically needy. This is a federally funded program operated through the social services division of the Arkansas Department of Human Services. "Disability" is defined by both state and federal regulations as a "physical or mental impairment which prevents the individual from doing any substantially gainful work . . . and which has lasted or is expected to last for at least 12 months . . . "

Minnie Williams was forced to work on a farm when she was a child and was unable to obtain any formal

education. She spent her adult life as an unskilled farm laborer and caring for her invalid mother. She was 59 years of age at the time of the hearing. She receives no income from any source, therefore, she is ineligible for social security benefits. Dr. John D. Ashley, a local physician, testified that in his opinion appellant suffered from a number of impairments, including: migraine headaches, goiter, rheumatoid arthritis in multiple joints, paraxysmal, anxiety attacks, osteoarthritis, enlarged thyroid, extreme nervousness, nausea, otitis guterma, and arthritis of the lumbar spine. His testimony was that appellant was to avoid any type of activity which included walking, standing, stooping, kneeling, lifting, reaching, pushing and pulling. He concluded by saying that in his opinion she was totally and permanently disabled. There was another medical report which was essentially the same as that of Dr. Ashley's. The medical testimony was not contradicted. It is my opinion that reasonable minds could not find that this woman was not totally disabled. There is no known gainful employment, in my opinion, which does not involve some of the activities prohibited by the medical evidence in this case.

I would reverse this case and order Minnie Williams to be certified as totally disabled from engaging in any gainful employment as intended by the regulations herein involved.

STEELE HAYS, Justice, dissenting. This illiterate, sixty-year-old woman applied for Medicaid under the Medically Needy Program. She claims to suffer from goiter of long duration, shortness of breath, dizzy spells, migraine headaches, chronic ear infection and rheumatoid and lumbar arthritis. Her employment has been limited to field work, doubtless due in part to illiteracy, but she had to give that up about fifteen years ago. She says she can do some housework, though only sporadically, and is limited in what she is physically able to do. Her brother gives her what help he can for food and medication.

Appellant's claims of disability are fully supported by several medical reports of Dr. John D. Ashley of Newport. He considers her condition to be permanent and totally disabling. Whether Dr. Ashley's opinion is to be discounted

because he is an advocate for his patient, I cannot say. He may simply have believed the appellant was totally disabled, as he reported her to be.

Certainly, the burden is on the appellant to prove her entitlement to these medical benefits in the first instance. But where she has done that by independent, credible medical opinion, then an agency decision adverse to her must be supported by substantial evidence. *Harris* v. *Daniels,* 263 Ark. 897, 567 S.W.2d 954 (1978). Ark. Stat. Ann. § 5-713 (Repl. 1976). Here, I can find nothing of substance that supports the denial of benefits. The sum and substance of the evidence opposing appellant's claim of entitlement consists of a brief printed form which recognizes some of Dr. Ashley's findings, but goes on to state, "Based on the evidence our decision follows:"

1. Eligible     ( )
2. Ineligible   (x)

This "evidence" utterly fails to meet the requirements of the law in two respects: first, a one-word peremptory denial of a claim for medical benefits, so clearly needed, fails to meet, or even approach, the test of *substantial* evidence, which has been defined as evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred. The test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences. Wigmore on Evidence, 3rd Ed. vol. 9, at 300. Substantial evidence has been defined as:

> "Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture." Ford on Evidence, vol. 4, § 549, at 2760.

Second, the avowed purpose of the Administrative Procedures Act is to improve the administration of justice by providing fair procedures, including judicial review. Where

a claim of benefits (whether workers' compensation, unemployment insurance, or medical aid to the needy) is based on substantial grounds, and is denied by an agency with no explanation except that it is "denied", any significant review by the courts as to fairness is totally destroyed. We are left in such instances to simply accept, on pure faith, an unsupported, one-word opinion that the claimant is "ineligible." Thus, our obligation to provide meaningful appellate review is abdicated in favor of the agency. I respectfully dissent.